SHADUR, Senior District Judge,
concurring:
At the outset I should emphasize that this brief concurrence reflects no disagreement with the results that have been announced in Judge Becker’s detailed and masterful treatment of the enormously complex subject matter that we have been called upon to deal with here. To the contrary, both the ultimate resolution of each substantive issue posed by the record before us and (with the limited exception set out here) the reasoning by which those results have been reached are the subject of our panel’s unanimous agreement. Instead I write only to express-the view (which is dealt with in somewhat different form in n. 16 of the majority opinion) that United States v. Halper does not play the precise role that the majority’s exposition suggests in analyzing the concept of “punishment.”
*1272 This is not at all a matter of “[c]abining Halper to monetary penalties,” as n. 24 of the majority opinion describes the First Circuit’s recent opinion in United States v. Stoller. Any efforts of the lower courts in the federal system to interpret the sometimes Delphic pronouncements from the Supreme Court can on occasion resemble (to mix metaphors) the divination of entrails. When two such able and respected judges as Judge Becker and the First Circuit’s Judge Bruce Selya come to such differing conclusions as to the meaning and significance of a single Supreme Court opinion in the type of synthesis that each of them has attempted in the course of defining “punishment” for double jeopardy purposes, that very difference creates a strong implication that the oracular message from the ultimate authority ranks high in the scale of obscurity. With some trepidation, I should like to add a few comments in a further effort to explicate Halper.
It is worth repeating the two consecutive sentences in Halper, 490 U.S. at 448-49, 109 S.Ct. at 1901-02 (citation omitted) that have the puzzling appearance of looking in opposite directions, based on their seemingly odd usage and placement of the word “only” in each of the sentences:
From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.
In surface terms that usage appears to leave a gap, a no-man’s land, with the first of the sentences saying that a civil sanction is punitive (and is hence outlawed on double jeopardy principles) unless it serves only a remedial purpose, and the second saying that a civil sanction is impermissible for double jeopardy purposes solely to the extent that it serves only deterrent or retributive functions rather than being remedial. But I agree with the majority’s n. 16 that those sentences can be reconciled — though to me the critical element of that reconciliation is in the phrase “to the extent that,” which I have therefore also underscored for emphasis. Although the difference may be subtle, it is I believe significant. Let me amplify.
In the process of synthesizing Halper and Kurth Ranch (which I agree represents the proper approach), it seems to me to be critical to recognize the context in which the Halper court spoke. As already stated, Hal-per did deal with a monetary penalty. Although that is not of course a basis for restricting the case’s significance solely to such monetary types of “punishment” or non-“punishment,” it does help to explain the significance of the “to the extent” language in the earlier-quoted excerpt from Halper. If for example a $100,000 forfeiture of property of a previously-convicted defendant is imposed, one “that does not remotely approximate the Government’s damages and actual costs, [so that] rough justice becomes clear injustice” (Halper, 490 US. at 446, 109 S.Ct. at 1901), it runs afoul of the Double Jeopardy Clause precisely because of that excessiveness. That is, such excessiveness triggers the Halper language that double jeopardy is involved “to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution” (id. at 449, 109 S.Ct. at 1902).
Just so with Judge Becker’s soupmeat analogy. If a previously-convicted defendant is sent out for soupmeat armed with appropriate protection against the elements (snow and cold), no double jeopardy concerns are implicated. But the answer is different when the circumstances are changed to include the unjustified deprivation of warm clothing and boots. Why? Because the previously-convicted person “may not be subjected to [that] additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution” (id.).
Where I believe the majority analysis presents difficulties is not in the area of monetary sanctions or in the hypothetical situation in which a sanction may be carved *1273 up (like soupmeat?) into discrete elements, but in extending that approach to situations in which the second sanction does not lend itself to such a convenient parsing out or splitting (in the manner that is true both of a monetary penalty, part of which can be labeled as remedial and part of which may exceed what is needed for remedial purposes, and of the soupmeat example, which can also readily be separated into different components of the sanction). It is in that respect that I respectfully suggest that the first quoted sentence from Halper cannot be isolated from the next one-that Halper should not be perceived as a pronouncement that as to every type of sanction, “punishment” (with its potential effect for double jeopardy purposes) is involved unless the sanction can be explained entirely without ascribing to it some retributive or deterrent component.
As the majority opinion correctly says at page 1265:
Here, the solely remedial purpose of helping law enforcement agencies keep tabs on these offenders fully explains requiring certain sex offenders to register.
And it is equally correct to say that this “solely remedial” characterization is not altered by the fact that Artway may legitimately perceive registration as imposing deterrent or retributive consequences on him (as Halper itself states, 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7, “On the contrary, our cases have acknowledged that for the defendant even remedial sanctions carry the sting of punishment”).
But having said all of this, I again stress that it is unnecessary to our unanimous conclusion about the validity of the registration provisions of Megan’s Law-a conclusion that follows from the just-stated determination that those provisions are purely remedial-to go on to decide what our conclusion would have been if we had determined that they were partially retributive or deterrent as well. It is worth remembering that Hal-per itself contained a caveat against universalizing the rule that it announced. Here is what it said later down the page from the language quoted both by the majority opinion and in this concurrence (490 U.S. at 449-50, 109 S.Ct. at 1902-03):
What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as “punishment” in the plain meaning of the word, then the defendant is entitled to an accounting of the Government’s damages and costs to determine if the penalty sought in fact constitutes a second punishment.
On the other hand, I certainly agree with the majority that Halper contributes importantly to the total analysis, both by its acknowledgement that “civil” penalties may constitute punishment (id. at 447-48, 109 S.Ct. at 1901-02) and by adding the concept of objective inquiry to that analysis (id. at 447, 109 S.Ct. at 1901). So this concurrence concludes as it began, with a total joinder in the conclusions reached in Judge Becker’s fine opinion for the majority, and with a departure from that opinion’s reasoning only in terms of voicing a suggested caveat — a caution against ascribing an excessive degree of importance to one portion of the language quoted from Halper in the effort to forge a total synthesis of the Supreme Court’s jurisprudence for all future double jeopardy anal-yses.